38 Cal.2d 42 (1951)
Estate of WILLIAM TARRANT, Deceased. BEN H. BROWN, as Public Administrator, etc., et al., Respondents,
v.
GREAT NORTHERN RAILWAY COMPANY et al., Appellants.
L. A. No. 21772. 
Supreme Court of California. In Bank. 
Nov. 16, 1951.
 Ernest A. Tolin, United States Attorney, Clyde C. Downing and James C. R. McCall, Assistant United States Attorneys, Blek, Wilcox & Donahue, C. F. Wilcox and Elton D. Boone, Jr., for Appellants.
 Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondents.
 SPENCE, J.
 This is an appeal from a judgment of distribution whereby bequests to certain pension funds were declared invalid and the property so bequeathed was held to escheat to the State of California for want of heirs. (Prob. Code, 231.) The appealing legatees contend that the respective bequests are charitable in purpose and should be so enforced by appropriate order. Their position is well taken in the light of the record and the applicable law determinative of the validity of charitable gifts.
 William Tarrant died on January 13, 1946, a resident of the county of Los Angeles, this state. His last will was duly admitted to probate and the public administrator was appointed administrator with the will annexed. After paying all debts and providing for all charges and expenses of administration, the administrator filed his first and final account and report, and petitioned for instructions relative to the distribution of the residue of the estate ($6,213.59 in money). So presented for construction were the provisions of the will whereby the testator bequeathed his estate in equal one-third shares to (1) the "Pension Fund of the Canadian Pacific Railway Company of the Dominion of Canada, with General Offices at Montreal, Canada"; (2) the "Pension Fund of the Great Northern Railway Company, a corporation, with head offices at St. Paul, Minnesota"; and (3) the "Pension Fund of the Railroad Retirement Board with Headquarters at Washington, D.C., which fund is administered by the Treasury Department of the United States Government," with the added proviso that if the said board could not accept, its one-third should go to the other "two Pension Boards ... in equal parts." After a hearing, the probate court held that the bequests were noncharitable in nature, that the claimant *46 legatees were ineligible to take by will under Probate Code, section 27, and that the property should escheat to the state. From the judgment accordingly entered, the legatees appeal, contending that the court misconstrued the purport of the bequests and erroneously applied the cited statute.
 [1] "Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law. A bequest intended as a charity is not void, and there is no authority to construe it to be legally void, if it can possibly be made good." (Estate of Hinckley, 58 Cal. 457, 513; Collier v. Lindley, 203 Cal. 641, 654 [266 P. 526]; Estate of Bunn, 33 Cal.2d 897, 903 [206 P.2d 635]; see 14 C.J.S. 6a, p. 427.) [2] Since the enactment of the Statute of Charitable Uses in 1601 (43 Eliz. c. 4; 7 Pickering's Eng. Stats. p. 43), provisions for the "supportation, aid and help of young tradesmen, handicraftsmen and persons decayed" have been recognized as charitable in their design to "accomplish objects which are beneficial to the community." (Rest., Trusts, 368.) [3] The scope of the word "charity" changes and enlarges with the needs of men and must advance with the progress of civilization so as to encompass varying wants of humanity properly coming within its spirit. (People v. Dashaway Assn., 84 Cal. 114, 122 [24 P. 277, 12 L.R.A. 1177]; Rest., Trusts, 374.) [4] It is the policy of the law to favor gifts for charitable purposes, and a will providing such gifts will be liberally construed in order to accomplish the intent of the donor. (Estate of Yule, 57 Cal.App.2d 652, 654 [135 P.2d 386]; see, also, 14 C.J.S. 11, p. 437; Estate of McDole, 215 Cal. 328, 335 [10 P.2d 75]; Estate of DeMars, 20 Cal.App.2d 514, 517 [67 P.2d 374].) Consistent with these principles, the validity of the challenged bequests as charitable trusts appears beyond dispute.
 The respective bequests present differing factual considerations as disclosed by the probate court's memorandum opinion on file herein (Rules on Appeal, rule 5a, 36 Cal.2d 1, 5), and they will be discussed in the order above named. In voiding the bequests, the court relied on section 27 of the Probate Code, which at the time involved and as here pertinent provided: "A testamentary disposition may be made to the state ... to unincorporated religious, benevolent or fraternal societies or associations ... to corporations formed for religious, scientific, literary or solely educational or hospital or sanatorium purposes ... or for similar public purposes. No *47 other corporation can take under a will, unless expressly authorized by statute."
 First: The Canadian Pacific Railway Company is a profit corporation organized and existing under the laws of the Dominion of Canada. In addition to its regular operations as a railway company, it adminsters as trustee a pension fund in which are deposited three per cent deductions from the salaries of employees. However, the employee contributions are insufficient to maintain the fund so the company on a "voluntary" basis also makes contributions thereto, which it may "alter, suspend or discontinue from time to time" as it should see fit. The pension fund is used solely for the benefit of the company's retired employees and as trustees, the "company does not have any direct beneficial interest therein."
 [5] The nature of the bequest is not necessarily determined by the status of the organization to which it is made, for "a charitable gift may be made to a non-charitable institution so long as the purpose of the gift remains charitable." (Estate of Henderson, 17 Cal.2d 853, 859 [112 P.2d 605]; italics added.) [6] Manifestly, a bequest in aid of pension relief for retired, non-self- supporting railroad men and their dependents is a charitable use in the classic sense, and the fact that the benefits are confined to the employees of a particular railroad company does not prevent such bequest from being charitable. (3 Scott on Trusts, 375.2, p. 2026.) [7] Nor does it matter that the contributing employees in receiving the benefits from the funds may be deemed a charitable group in the nature of a mutual benefit society, in that "each individual is providing only for his own welfare and does not intend to make a contribution toward the assistance of others." (Estate of Henderson, supra, p. 860.) [8] The significant consideration here is the charitable purpose of the testator in making the bequest to the organization as an independent donor and without any benefit to himself. The distinction was so noted in the Estate of Henderson, supra, where a will left property to the Eastern Star Homes for the use of its inmates. Regardless of the merit of the argument that the Home was similar to a mutual benefit association, with contributions from the members offsetting reciprocal benefits to them so that it should not be considered a charity, it was said at page 860: "If an outsider, however, receiving no benefits from the organization, makes a gift to it, that gift may well be a charitable one if the members of the organization are sufficiently *48 numerous and it is organized for a purpose beneficial to society." (Italics added.)
 From its memorandum opinion, it appears that the probate court invalidated the bequest on the following premise: that the pension fund was maintained at a fixed level, that the testator's contribution would neither increase the benefits to the individual beneficiaries nor decrease the contributions from the employees, but would only serve to relieve the company from making such voluntary contributions as it would otherwise make in order to maintain the sufficiency of the fund, and that therefore the company would be the direct beneficiary of the testator's bounty contrary to the terms of section 27 of the Probate Code in prohibiting such a corporation from taking in a private capacity under the will of a California citizen. [9] But even assuming the propriety of the observations as to the benefit that the company might sustain if it should elect to reduce its future contributions to the pension fund--a conjecture based wholly on surmise and speculation--the charitable purpose of the testator as one outsider making a contribution to the fund without benefit to himself, in establishing the nature of his bequest, cannot be affected because another outsider may make a less contribution pro tanto. Rather, within the contemplation of the law, the company, like the testator, occupies the status of an "outsider" contributing as a donor to the pension fund and without benefit to itself; and its status does not change to a beneficiary merely because of any pro tanto reduction it may make in its future contributions. All the gifts of the donors to such fund remain charitable regardless of what their effect may be on other possible "outside contributors." [10] Accordingly, regardless of the ineligibility of the company to take a testamentary disposition for its own benefit under the will (Prob. Code, 27), it may receive a bequest as trustee if such bequest is for a charitable purpose. (Estate of Henderson, supra, 17 Cal.2d 853, 859; Estate of Yule, supra, 57 Cal.App.2d 652, 654.) Such is the case here, and the probate court erred in failing to sustain the bequest in question.
 Second: The Great Northern Railway Company does not have a separate pension fund. However, there is a non-profit Minnesota corporation called the Veterans Association of the Great Northern Railway Company. Among the purposes stated in its articles of incorporation are the cultivation of social relations and knowledge of railroading among its members; the creation and maintenance of mutual interest in the *49 common welfare of its members and of the Great Northern Railway Company; the establishment and administration of a pension fund for the benefit of its members; and the acquisition of property by bequest. The funds of the association consist of membership dues and voluntary donations made by a number of officers of the Great Northern Railway Company. Except for the actual expenses of running the organization, all of the funds are used to aid needy members, their widows and families. In this regard, it is also the policy of the association to make supplementary donations to those members receiving small pensions from the Railroad Retirement Board so that they may have an adequate amount to take care of their everyday living expenses.
 In his petition for instructions, the administrator alleged that the testator intended the fund administered by the Veterans Association of the Great Northern Railway Company to be the subject of this bequest. There was no contradiction or denial made of this allegation by any party to these proceedings, but the court concluded that the bequest was invalid because no separate pension fund existed for the Great Northern Railway Company, and it could not be inferred that the testator intended a bequest to the Veterans Association of that company. This determination appears improper under the circumstances.
 [11] While speculation and conjecture as to the testator's intention may not be followed by the court in order to avoid a conclusion of intestacy (Estate of Zilke, 115 Cal.App. 63, 66 [1 P.2d 475]), it is well established law in this state that "a gift will not be permitted to fail because of misnomer, misdescription, or ambiguity of description." (Estate of Steinman, 35 Cal.App.2d 95, 102 [94 P.2d 821].) [12] It is evident from the terms of the bequest itself that the testator knew that there was some fund which was administered by some unit connected with the Great Northern Railway Company and in aid of the company's employees, and that he intended to identify his bequest with such fund. Upon such premise, application of the doctrine of cy pres would reasonably accomplish the dominant purpose of the testator to make a charitable bequest for the benefit and assistance of the company's employees. (Powers v. Home for Aged Women, 58 R.I. 323 [192 A. 770, 776, 110 A.L.R. 1361]; see 14 C.J.S. 10, p. 15; Estate of Hinckley, supra, 58 Cal. 457, 504; Collier v. Lindley, supra, 203 Cal. 641, 655; Estate of Loring, 29 Cal.2d 423, 436 [175 P.2d 524].) *50
 Third: The Railroad Retirement Board is an unincorporated independent agency of the United States Government. Said board estimates the amounts necessary for the payment of pension benefits under the Railroad Retirement Act (Title 45 U.S.C.A. 228a-s), and the funds therefor are accordingly appropriated by Congress. (Ibid, 228j, 228o.) The railroads and their employees pay wage-taxes but these tax payments are wholly divorced from the pension fund. (State of California v. Anglim, 129 F.2d 455; cert. den. 317 U.S. 669 [63 S.Ct. 74, 87 L.Ed. 537].) Rather, the pension payments are actual bounties of the United States Government dependent upon the length of service and amount of earnings. In holding the testator's bequest to this pension fund as noncharitable, the probate court (1) likened the fund to a mutual benefit society or insurance company in that the employees through withholding taxes contributed to the payments for their own welfare; (2) observed that disbursements from the fund were not in any way based upon need; and (3) concluded that the bequest to the fund would only serve to relieve federal taxpayers through decreasing the amount which Congress would be required to appropriate for railroad retirement pensions, which relief is not a charitable purpose. This reasoning cannot be sustained.
 [13] In the first place and regardless of the discussion in the Estate of Henderson, supra, 17 Cal.2d 853, 859-860, declaring that a gift may be charitable in purpose though made to a mutual benefit association, the payment plan under the Railroad Retirement Act bears no resemblance to the design of a mutual benefit society, for the amount of the railroad employees' withholding payments--the wage- taxes--has no relation to the pension amounts the United States Government will pay to the railroad employees or their dependents. In other words, there is no such "earmarking" of the employees' contributions as a supporting source for the fund. [14] Nor does it matter that the pension payments are not based upon need. "Need" is a wholly relative term and there is no clear line of "demarkation as to the requisite financial status of a particular recipient in order to justify the characterization of the benefit to him as charitable." (In re Skuse's Estate, 165 Misc. 554 [1 N.Y.S.2d 202, 205].) As was said in the Estate of Henderson, supra, 17 Cal.2d 853, at page 857: "Relief of poverty is not a condition of charitable assistance. If the benefit conferred has a sufficiently widespread social value, a charitable purpose exists." [15] And finally, while *51 the bequest may also work a benefit to the federal taxpayers, that fact does not change the charitable nature of the gift. The same observation would prevail with respect to the reduction of the taxpayers' burden in the situation discussed in the Estate of Hendrix, 77 Cal.App.2d 647 [176 P.2d 398], where a bequest to the United States Veterans' Administration was upheld as a gift for charitable purposes. In fact, the basic considerations in the Hendrix case likewise obtain here in placing the Railroad Retirement Board as a government agency in the same category as the Veterans' Administration there involved. In each instance the gift was for "charitable purposes to a legally constituted agency," a consideration distinguishing a "bequest to the 'United States Government,' without qualification as to administration or purpose." (Estate of Burnison, 33 Cal.2d 638, 646 [204 P.2d 330]; aff. 339 U.S. 87 [70 S.Ct. 503, 94 L.Ed. 675].) [16] Certainly the fact that the recipient of a charitable gift is already engaged in the charitable project for the use of which the donation was made would not render the gift noncharitable. (Estate of Henderson, supra, 17 Cal.2d 853, 856.)
 From the above analysis of the respective bequests to the separate pension funds, it is clear that the testator intended them as gifts for charitable purposes, and that they should be upheld as charitable trusts upon that premise consistent with his manifest intent. [17] While it is true that "the findings of the trial court will not be disturbed on appeal if the record discloses substantial evidence to support them," as was the case in California Emp. Com. v. Betthesda Foundation, 54 Cal.App.2d 348, 350 [128 P.2d 874], where the issue involved was the charitable status of the corporation in question, such rule has no pertinency where the evidence without conflict clearly establishes the impropriety of the inferences drawn by the court from the uncontroverted facts. So here it appears that the probate court erred as a matter of law in its adjudication of the determinative issue--the nature of the testamentary gifts--and in such circumstances its findings contrary to the undisputed facts have no binding force. (Estate of Burnett, 11 Cal.2d 259, 263 [79 P.2d 89].)
 The judgment is reversed with directions to the probate court to proceed in accordance with the views herein expressed. Appellants will recover their costs on appeal.
 Gibson, C.J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.