[Civ. No. 19795.   Second Dist., Div. Three.   Dec. 18, 1953.]

Estate of WILLIAM H. CUTLER, Deceased.   ROBERT C. KIRKWOOD, as Controller, Appellant, v. GEORGE L. WHITE, as Executor, etc., Respondent.

148

James W. Hickey, Walter H. Miller and Arthur K. Marshall for Appellant.

Catlin & Catlin, Frank D. Catlin, Henry W. Catlin, George L. Catlin and William E. Catlin for Respondent.

VALLÉE, J.—Appeal from an order fixing the inheritance tax. The matter was submitted to the probate court on a stipulation of facts.

Decedent died May 21, 1951, a resident of California. On April 2, 1932, Newton Trust Company, since 1947 known as Newton-Waltham Bank and Trust Company, a Massachusetts banking corporation, referred to as Newton, executed a declaration of trust by which it agreed to accept and hold gifts made to it either *inter vivos* or by devise or bequest. The property to be accepted and held was designated as the ''Permanent Charity Fund.'' The declaration provided: ''The income of this Fund, less proper charges, expenses and deductions, shall each year forever be applied to such charitable purposes as the Committee hereinafter provided for shall in its own uncontrolled discretion from time to time select or determine. Without in any way limiting the charitable purposes for which said income may be used, the said Committee may from time to time select or determine objects or purposes of benevolence or charity, public or private, including educational and charitable institutions, whether incorporated or not,

and the relief of individual needs regardless of race or creed. The Committee shall however give special consideration to the relief of the needs of residents of, and charitable and educational institutions whether incorporated or not located in, the City of Newton [Massachusetts]."

On October 11, 1940, decedent and Newton executed a trust agreement by which decedent transferred certain property to Newton in trust. Newton agreed to pay the net income of the trust to decedent for life. The agreement provided: "Upon the decease of the Donor, the Trustee is directed to pay the remainder of the property to NEWTON TRUST COMPANY in its capacity as Trustee of the 'Permanent Charity Fund' under an agreement and Declaration of Trust dated April 2, 1932 to be held upon the trusts of said Agreement and Declaration of Trust, and which shall be known as the 'WILLIAM H. CUTLER AND ANNAH W. CUTLER FUND', and at the discretion of the Trustee any property coming into its hands through the will of the Donor or from his estate may be combined with and included in this fund, and the Trustee is directed in making payments from this fund to give preference to needy individuals who are residents of the City of Newton rather than using the fund or any part thereof to assist charitable corporations or organizations, . . ."

Decedent's will and a codicil thereto were admitted to probate. The will devised and bequeathed the residue of certain trust property and the residue of the estate to "Newton-Waltham Bank and Trust Company, in its capacity as Trustee of the Permanent Charity Fund under an agreement and declaration of trust dated April 2, 1932, to be held upon the trusts under said agreement and declaration of trust, which fund so given shall be added to the fund given hereinbefore to the said Newton-Waltham Bank and Trust Company, as Trustee, to be known as the 'WILLIAM H. CUTLER AND ANNAH W. CUTLER FUND', with the same provision as to payments from the said fund."

Massachusetts was at the date of death of decedent, and is now, a "reciprocal" state, as referred to in section 13842 (c) (2) of the Revenue and Taxation Code.

The appraised value of the property transferred by decedent to Newton was $160,802.20. The Inheritance Tax Appraiser reported a tax of $30,674.29 of which $17,542.76 was on the transfers to Newton and $13,131.53 on other transfers.

The executor of decedent's will filed objections to the report insofar as it included a tax on the transfers to Newton. The

court concluded that the tax assessed and fixed on the value of the property transferred to Newton was erroneously assessed and fixed. It vacated and set it aside and fixed the tax at $13,131.53. The controller appeals.

The question as stated by the controller is: ''Where a decedent transfers moneys to a business corporation in Massachusetts, in trust exclusively for charitable works, and does not limit such charitable works to beneficiaries in California or states having reciprocal provisions for charities can the State of California collect inheritance tax thereon?''

The pertinent parts of section 13842 of the Revenue and Taxation Code provide that property transferred (1) to any corporation exclusively engaged in or devoted to any charitable work, *or* (2) to any corporation in trust exclusively for or to be devoted exclusively to any charitable work, is exempt from the inheritance tax if any of the following conditions is present: ''(c) In the event that the society, corporation, institution, or association is organized or existing under the laws of a territory or another state of the United States or of a foreign state or country, at the date of the decedent's death either of the following occurred: . . .

''(2) The laws of the territory, other state, foreign state, or foreign country contained a reciprocal provision under which property transferred to a similar society, corporation, institution, or association organized or existing under the laws of another territory or state of the United States or foreign state or country was exempt from legacy, succession, or death taxes of every character, if the other territory or state of the United States or foreign state or country allowed a similar exemption in respect to property transferred to a similar society, corporation, institution, or association organized or existing under the laws of another territory or state of the United States or foreign state or country.''

Appellant contends that an exemption from inheritance tax of the transfers involved would cause discrimination against trust companies and other pecuniary corporations organized in California, which would be unfair, unreasonable, and contrary to the intent of the Legislature. He argues that exemption of the transfers would mean that an organization incorporated for profit and a recipient of a gift by a resident of California would be exempt from tax if the recipient were organized outside of California, but would be taxable if the same corporation were organized in California, where in either case such transfer were not limited for use in this state. He

further contends that section 13842(c)(2) does not relieve the transferee of the tax as it exempts from tax only transfers to charitable institutions located in "reciprocal" states. He argues that because under the trust indenture the trustee may dispense the charitable funds to recipients who are not residents of Massachusetts, the facts are not within the section.

██ The statute should be liberally construed so as to favor and encourage charitable funds and should not be construed so as to lay the burden of inheritance taxes upon the property devoted to such uses and thus, to the extent of such burden, hamper or limit the resources of the trust intended for such beneficial uses. (*Estate of Irwin*, 196 Cal. 366, 373 [237 P. 1074]; *Estate of Barter*, 30 Cal.2d 549, 554-555 [184 P.2d 305]; *Estate of Yule*, 57 Cal.App.2d 652, 654 [135 P.2d 386].)

We are of the opinion that the reasoning of *Estate of Bendheim*, 100 Cal.App.2d 398 [223 P.2d 874], controls the decision in the case at bar. In Bendheim, the devise and bequest was to Wells Fargo Bank & Union Trust Company, in trust, with direction to pay the net income "to the MOTHER CHURCH, THE FIRST CHURCH OF CHRIST SCIENTIST, BOSTON, to be used one-half for the CHRISTIAN SCIENCE PACIFIC COAST SANITARIUM in San Francisco, and one-half for the PLEASANT VIEW HOME, CHRISTIAN SCIENCE HOME, in Concord, New Hampshire." The evidence showed that the Mother Church was a Massachusetts religious corporation engaged in religious and charitable work only; that Massachusetts was a "reciprocal" state within the meaning of section 13842; that one of the charities of the Mother Church was Pleasant View Home in Concord, New Hampshire, which was a corporation organized under New Hampshire law solely for the purpose of charitable activities under the direction of the Mother Church; that New Hampshire was a "non-reciprocal" state. After quoting from section 13842, the court said: "Since it is stipulated that the transferee 'Mother Church' is a corporation organized and existing under the laws of the State of Massachusetts, a 'reciprocal' state, it is apparent that if the transfer had been made to that corporation without any limitation as to the use of the fund the transfer would have been exempt from the tax under the plain terms of the code. Hence the real question arises whether the directions in the will as to the use of the funds in a 'non-reciprocal' state defeats the exemption.

■ "It is settled law that taxing statutes are acts *in invitum* and that the courts will not adopt a strained construction to impose a tax which is not a part of the legislative act. The same reasoning applies to exemptions. ■ If the legislative act expresses an intention to exempt certain property judicial construction is not appropriate to defeat the exemption. Here the statute exempts property transferred 'to' a charitable institution to be devoted exclusively to charitable activities. Hence, if the transfer here had been made to the Mother Church alone, an institution admittedly engaged exclusively in religious and charitable work, there could be no doubt that it would be exempt from the tax in this state since Massachusetts is a 'reciprocal' state. But there is nothing in the statute supporting appellant's argument that the transferred fund must be used exclusively in some 'reciprocal' state. The plain words of the statute relate to a transfer 'to' a charitable institution in a 'reciprocal' state, 'to be devoted' exclusively to charitable work. It is inconceivable that the Legislature intended to impose on the taxing authorities the duty of visitation and inspection of the alien charitable institution to determine the beneficiaries of the charitable transfer.

■ "It is a matter of knowledge many large charitable institutions engaging in nationwide activities like the American National Red Cross, the Salvation Army, and others do not restrict their charities to any particular state or territory, but spread them to many parts of the world. A transfer to the Red Cross to aid its charitable work among those engaged in our military service in foreign countries would be manifestly a transfer 'to' a charitable institution 'to be devoted' to charitable work and, as such, exempt from the tax.

"There are no authorities directly in point, but the trend of the California cases is that the question of exemption from the tax is to be determined on the basis of the character of the 'transferee' rather than on the basis of the character of the beneficiaries under the grant. Somewhat similar is *Estate of Barter*, 30 Cal.2d 549 [184 P.2d 305]. The bequest was made to the British government for the benefit of British refugee children. The British government was not eligible to act as trustee and the trial court substituted a California charitable corporation. In holding that the transfer was exempt under the code section the Supreme Court said (p. 555): 'Rather it would appear that it is the character of the *transferee*, not the character of the transfer—whether "in

trust or otherwise"—that is the first consideration under the terms of the proviso; and it is only in the event that the transferee does not so qualify in purpose and place of organization that the restriction as to "use within this State" becomes material. Such view coincides with the principle of liberal construction of exemptions in favor of charitable organizations. (Cooley, Taxation, 4th ed., vol. 2, § 673, p. 1415; Sutherland, Statutory Construction, 3d ed., Horack, vol. 3, § 6702, p. 296.)' Following this statement the court said, (p. 556) after approving the act of the trial court in substituting a qualified California corporation as trustee: 'Hence, in no view of its rights or of its relation to the beneficiaries of the trust does it necessarily follow that the residuary estate was transferred to the British Government, but rather such estate passed by due and proper order of the court to a charitable corporation of this state qualified to administer a charitable trust. That event exempted it from liability within the scope of the inheritance tax law.' . . .

██ "But without further discussion we may conclude that the plain meaning of the code section is to exempt from the inheritance tax property transferred 'to' a charitable institution located in a 'reciprocal' state without regard to the locale of the recipients of the charities in which such institution may be engaged."

██ Section 13842 makes no distinction between a transfer to a charitable corporation and a transfer to a corporation organized for profit if the transfer to a corporation of the latter character is "in trust exclusively for or to be devoted exclusively to any charitable . . . work," and the corporation is organized under the laws of another state which is a "reciprocal" state. ██ The stipulated facts come squarely within the exemption. The property was transferred to a corporation exclusively for and to be devoted exclusively to charitable work. The corporation was organized under the laws of another state at the date of decedent's death. It was stipulated that the other state, Massachusetts, is a "reciprocal" state, which means that the laws of Massachusetts comply with the conditions prescribed in paragraph (2) of subsection (c) of section 13842. Newton qualifies "in purpose and place of organization." The statute does not say that a corporation organized for profit in a "reciprocal" state shall use the trust property in that state. As held in *Estate of Bendheim, supra,* 100 Cal.App.2d 398, the place of residence of recipients and the ultimate use of the benefits are of no

consequence in qualifying Newton for the exemption. Thus the Bendheim case decides this case and the transfers are exempt.

We find nothing in *Estate of Fleming,* 31 Cal.2d 514 [190 P.2d ·611], contrary to the views we have expressed. The court there held that an educational bequest, in trust, to a California corporation organized for profit must, in order to qualify for the exemption, be limited for use within this state. The court gave no consideration to the condition expressed in (c) of section 13842. Dicta in the Fleming opinion is to the effect that a transfer to the American Red Cross, a charitable corporation not organized under California law, is exempt, although the transfer is not limited for use within this state.

■ We find nothing unfair, unreasonable, or contrary to the intention of the Legislature in the fact that the transfer must be limited for use within this state if it is to a corporation of this state organized for profit, and the fact that the use is not so limited if the transfer is to a corporation organized for profit under the law of a ''reciprocal'' state. The exemption applies only when the other state is a ''reciprocal'' state. Justification for such reciprocal provision, enacted in 1929 (Stats. 1929, ch. 844, p. 1840), ''lies in the fact that it may well serve to encourage other states to extend their laws exempting charities to include· those located here *(McLaughlin* v. *Poucher,* 127 Conn. 441 [17 A.2d 767, 769]) and so redound to mutual public benefit on a strictly *quid pro quo* basis.'' *(Estate of Fleming,* 31 Cal.2d 514, 520 [190 P.2d 611].)

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.